UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL W. McLAUGHLIN SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:10-cv-00131-TWP-DML |
| | ) |
| AUTOZONERS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment.  On August 24, 2010, Defendant Autozoners, LLC ("Autozone") fired Plaintiff Michael McLaughlin ("McLaughlin") for excessive absences.  This termination, however, did not arise in a vacuum.  McLaughlin had received a second written warning for attendance problems, and knew that additional attendance issues could lead to his termination.  Unfortunately, McLaughlin missed work from July 29, 2010 through August 15, 2010 due to health reasons.  It is undisputed that his absences from August 2 until August 15, 2010, which all stemmed from cellulitis in his right leg,[1] qualified for leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA").

The subjects of this dispute surround McLaughlin's absences on July 29 and July 30, 2010.  McLaughlin claims that those two absences qualify for FMLA leave and therefore cannot be counted against him for purposes of Autozone's absenteeism policy.  *See* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in

---

[1] Cellulitis is defined as a "spreading inflammation of subcutaneous or connective tissue." STEDMAN'S MEDICAL DICTIONARY 137 (1995).

employment actions . . . nor can FMLA leave be counted under 'no fault' attendance policies."). Autozone disagrees. Relying on evidence suggesting that these absences, although health-related, had nothing to do with cellulitis and did not arise out of an FMLA-qualifying condition, Autozone asserts that its decision to fire McLaughlin was lawful. Because the Court finds that genuine issues of material fact exist in this case, Autozone's Motion for Summary Judgment (Dkt. 37) is **DENIED** and McLaughlin's Cross Motion for Summary Judgment (Dkt. 60) is **DENIED**.

## I. BACKGROUND

Autozone has an attendance policy which provides that an employee will be terminated if they accumulate 12 points during any 12 month period. Absence is defined as "[b]eing absent from work on a scheduled workday, even if the [employee] has reported the absence to their manager." If, for instance, an employee is absent but provides proper notification, he receives 1 point. But if that employee does not provide proper notification, he receives 2 points. The policy also provides that no points are issued for absences that are "approved as an FMLA leave of absence." McLaughlin began working at Autozone in 2004 and was familiar with its attendance policies. On April 19, 2010, McLaughlin's supervisor, Mitchell Hon, issued McLaughlin a written warning, notifying him that he had accumulated six points due to attendance issues. Then, on July 1, 2010, McLaughlin's supervisor issued a second written warning after McLaughlin accumulated 8 points. McLaughlin understood that "the next steps" for further absences could include termination.

Later that same month, on July 29 and 30, 2010, McLaughlin missed work. According to medical records, on Thursday, July 29, 2010 at 8:51 a.m., McLaughlin called his physician, Dr. Rupp, and told the doctor's staff that he was a cancer survivor, that his condition demanded

urgent attention, and that he needed to get blood work done. The "Reason for Visit" listed on these medical records was "Blood work/oncology psa/meds check."[2] At the doctor's appointment, McLaughlin complained of pain in his abdomen for the past two to three weeks and "loose stools" for the previous two to three months. The records specifically stated "no fever." Under the "New Problems" section of the medical records, the doctor listed "elevated blood pressure without diagnosis of hypertension; diarrhea; abdominal pain." Dr. Rupp prescribed Lexapro, an antidepressant, ordered blood and stool samples, and ordered a CT scan of McLaughlin's abdomen to be taken the following day. (Ultimately, the CT scan results were "unremarkable".) Dr. Rupp also wrote a note stating that McLaughlin was ill and unable to work on July 29 and 30, 2010. That day, following his appointment, McLaughlin called his supervisor and informed him that he had another appointment the next day to have an MRI scan for stomach issues and kidney stones; he apparently did not mention cellulitis.

Somewhat curiously, during his deposition, McLaughlin provided an altogether different reason for his visit to Dr. Rupp. He testified that, on July 29, 2010, he visited Dr. Rupp because he had a "real high fever" of around 101 degrees and that Dr. Rupp had prescribed him "some kind of antibiotic." However, McLaughlin added that he "[d]idn't really know what was going on at the time." Given the procedural posture of this case, McLaughlin's testimony, where necessary, will be accepted as true, notwithstanding any inconsistency with Dr. Rupp's medical records, which do not mention a fever or antibiotics.

On Sunday, August 1, 2010, McLaughlin called his supervisor and informed him that he would be missing work on Monday due to leg problems that developed on Saturday, July 31, 2010. On Monday, August 2, 2010, McLaughlin called Dr. Rupp's office again – this time to

---

[2] As Autozone notes, "psa" presumably refers to "prostate specific antigen." A test for this antigen is sometimes used as an indicator for prostate cancer. (Dkt. 38 at 3, n. 3.)

schedule an appointment because of cellulitis on his right leg, which was "warm to touch" and "painful." At his appointment, McLaughlin complained that these symptoms "started Friday" – presumably meaning Friday, July 30, 2010. Dr. Rupp diagnosed him with cellulitis and prescribed an antibiotic. Dr. Rupp then wrote a note stating that McLaughlin was ill and unable to work from July 31 through August 6, 2010.

On August 6, 2010, Autozone sent McLaughlin information regarding short term disability benefits. The letter began "[t]hank you for submitting your information and request for Short Term Disability . . . benefits . . . ." The letter further noted that Autozone complies with the FMLA "in providing job-protected leaves . . . as applicable." The letter then instructed McLaughlin how to apply for leave and who to call if he had questions. On August 13, 2010, McLaughlin filled out his portion of the Employee Disability Form, indicating that his recent disability of cellulitis began on July 29, 2010, and he was expecting to return to work on August 16, 2010. That same day, Dr. Rupp filled out an "Attending Physician's Form" regarding McLaughlin's condition, writing that McLaughlin's cellulitis was "first diagnosed" on August 2, 2010. Dr. Rupp also wrote that McLaughlin became "totally disabled" on August 2 (not July 29 or 30), 2010. Finally, Dr. Rupp also wrote that McLaughlin could return to work on August 16, 2010.

On August 16, 2010, McLaughlin returned to work. Just over one week later, on August 24, 2010, Autozone terminated McLaughlin's employment due to excessive absences. According to Autozone's calculation, counting the 1 point he received for the July 29, 2010 absence and the 2 points he received for the July 30, 2010 absence, McLaughlin had accumulated 12.5 attendance points.[3] Upon learning of his termination, McLaughlin responded

---

[3] Arguably, there is a problem of basic arithmetic here. According to McLaughlin, he had accumulated 8 attendance points by July 1, 2010. He then received 1 point for his absence on July 29, 2010 and 2 points for his absence on

that "[y]ou can't do that under the FMLA." Less than two months later, on October 22, 2010, McLaughlin filed the present FMLA-based lawsuit.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party=s favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

---

July 30, 2010. This only adds up to 11 (still one point below the all-important 12 point threshold). Based on this faulty math, McLaughlin argues, "it is impossible to conclude . . . that [his] termination was a lawful act undertaken in accordance with its attendance policy as opposed [to] an unlawful interference with McLaughlin's FMLA rights." (Dkt. 61 at 16). The Court is not persuaded that this is the inevitable upshot of any error of addition. And, besides, Autozone has produced some evidence suggesting that its calculation was, in fact, correct. (Dkt. 64 at 11 and Dkt. 62-4 at 5.) Under Autozone's calculation, McLaughlin had accumulated 9.5 points by July 1, 2010 – not 8 points, as his written warning states. In the end, the jury is in the best position to sort out the existence and meaning of any mathematical discrepancy.

5

## III. DISCUSSION

At its core, this case boils down to a single question: did McLaughlin's absences on July 29 and 30 qualify for FMLA leave? If they did qualify, then Autozone ran afoul of the FMLA by counting those absences against him. *See* 29 C.F.R. § 825.220(c). But if they did not qualify, then they can be counted for purposes of Autozone's attendance policy, meaning his termination was legal. McLaughlin describes his lawsuit as an FMLA "interference" claim. Under this type of claim, "if an employer terminates an employee because of excessive absences and the employee was entitled to FMLA leave for some or all of those absences, then the employer has interfered with the employee's exercise of his or her rights under the FMLA." *Schober v. SMC Pneumatics, Inc.*, 2000 WL 1911684, at *13 (S.D. Ind. Dec. 4, 2000).

Under Seventh Circuit precedent, "[t]o prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir. 2006) (citation omitted). Such a claim requires the employee to establish five elements: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id*. (citations omitted). The claim in this case involves elements (3) and (4) – entitlement to leave and notice.

### A.     Background on the FMLA

Under the FMLA, "covered employers" must provide an "eligible employee" with "12 workweeks of leave in a 12-month period" for certain enumerated reasons. *Stoops v. One Call Communications, Inc*., 141 F.3d 309, 311-12 (7th Cir. 1998). One such reason is the existence of a "serious health condition that makes the employee unable to perform the functions of the

employee's job." 29 C.F.R. § 825.112(a)(4). "Whether an illness or injury constitutes a 'serious health condition' under the FMLA is a legal question that an employee may not sidestep in the context of summary judgment merely by alleging his condition to be so." *Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 499 (7th Cir. 1999). This does not mean, however, that "serious health condition" determinations are always definitively made at the summary judgment stage. *See Sevenson v. Hyre Elec. Co.*, 505 F.3d 720, 729 (7th Cir. 2007) (issue of material fact existed regarding whether employee had serious health condition).

According to the regulations, a "serious health condition" is defined as an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in 29 C.F.R. § 825.114 or continuing treatment by a healthcare provider as defined in 29 C.F.R. § 825.115. *See* 29 C.F.R. § 825.113. Here, it is undisputed that McLaughlin did not require "inpatient care," as he did not have "an overnight stay in a hospital . . . ." 29 C.F.R. § 825.114. As for "continuing treatment by a healthcare provider," 29 C.F.R. § 825.115(a) defines that term as follows:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). Finally, "incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

7

Here, the parties agree on a number of issues: Autozone is a "covered employer"; McLaughlin is an "eligible employee"; and, due to his cellulitis, McLaughlin was entitled to FMLA leave from August 2, 2010 until he returned to work. Thus, the only real dispute is the status of the absences on July 29 and July 30, 2010. This leads to three important questions. First, should McLaughlin's absences from July 29, 2010 through August 15, 2010 be treated as one continuous serious health condition? Second, was Autozone entitled to rely on Dr. Rupp's certification that McLaughlin did not become "totally disabled" until August 2, 2010? Third, what is the effect of Autozone's response to McLaughlin's notice that he potentially qualified for FMLA leave? Each of these questions is addressed in turn.

**B.      Should McLaughlin's absence from July 29 through August 15, 2010 be treated as one continuous "serious health condition"?**

McLaughlin frames his health battles as *a single continuous* bout of illness. In other words, "[b]ecause Defendant has not, and cannot, present any evidence demonstrating that McLaughlin was able to work from July 29, 2010 [through] August 15, 2010, McLaughlin's incapacity during the entirety of that time has been established." (Dkt. 61 at 8.) Consequently, "the undisputed evidence demonstrates that McLaughlin's [absences] constituted a 'serious health condition' as defined by the FMLA and its governing regulations." *Id*.

If only it were that simple. As Autozone emphasizes, there is scant evidence connecting McLaughlin's first visit to the doctor to his subsequent diagnosis of cellulitis. McLaughlin's July 29, 2010 visit to the doctor was precipitated by abdominal pains (which had lasted for the last two to three weeks), diarrhea (which had lasted for the last 2 to 3 months), a need for blood tests, and (according to his deposition) a fever. In response to these ailments, Dr. Rupp prescribed Lexapro (an antidepressant), prescribed "some kind of antibiotic" according to McLaughlin's deposition, ordered blood and stool samples, and ordered a CT of McLaughlin's

8

abdomen (which ultimately showed "unremarkable" results). As Autozone notes, "[i]t is clear from [the medical] records . . . that the condition for which McLaughlin was treated on Thursday July 29, 2010 and Friday July 30, 2010 is <u>a different condition than the cellulitis</u> for which the Physician Certification was submitted and for which Autozone approved FMLA leave from August 2 until his return to work on August 16, 2010." (Dkt. 38 at 8) (emphasis added). This argument is well-taken.

However, there is, at the very least, some evidence that McLaughlin's illness should be viewed as a single continuous condition. First, at his visit with Dr. Rupp on August 2, 2010, McLaughlin complained that he had been experiencing cellulitis-related symptoms since Friday July 30, 2010 (Dkt. 38-3 at 16) (noting that the cellulitis "started Friday"). If McLaughlin's July 30, 2010 absence is jettisoned from the equation, then he did not accumulate 12 attendance points and should not have been fired. Second, McLaughlin testified that he visited Dr. Rupp on July 29, 2010 due to a high fever. He later testified that, over the next few days, his fever intensified. Finally, he testified that he has experienced cellulitis on four prior occasions since being employed by Autozone, and that fever has accompanied cellulitis "every time." This leads to an inference that McLaughlin's July 29, 2010 visit to Dr. Rupp was, in fact, connected to cellulitis. On this point, it is worth highlighting that it is of little import that cellulitis was not actually diagnosed at this time. As the First Circuit has noted, "[i]t seems unlikely that Congress intended to punish people who are unlucky enough to develop new diseases, or to suffer serious symptoms for some period of time before the medical professional is able to diagnose the cause of the problem." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 163 (1st Cir. 1998).

In the Court's view, this evidence, coupled together, is enough to create genuine issues of fact as to whether McLaughlin's stretch of illness should be viewed as a single continuous

9

"serious health condition" – all subject to FMLA leave. And if McLaughlin's illness is viewed as a *single* serious health condition running from July 29 (or July 30), 2010 until he returned to work, then his termination was presumably improper. In short, the Court finds that this is an issue best reserved for the jury.

But the Court pauses to clarify two points. First, the Court is not persuaded by McLaughlin's fallback argument: that the illness causing his absences on July 29 and 30, 2010, standing alone, was a "serious health condition" warranting leave under the FMLA. This argument only applies if his condition that precipitated the July 29, 2010 doctor's visit is considered separate and distinct from his subsequent cellulitis diagnosis. There is no evidence suggesting that McLaughlin's first condition – if analyzed in isolation, detached from the cellulitis – incapacitated him for three full days as required by the regulations. *See* 29 C.F.R. § 825.115(a). To the contrary, Dr. Rupp's note merely stated that this condition – which essentially entailed stomach problems that had lasted two to three weeks, diarrhea that had lasted two to three months, and perhaps a fever – only prevented McLaughlin from working for two days: July 29 and 30, 2010. Plainly stated, McLaughlin has not produced any evidence raising the inference that this first illness, analyzed alone, was a three-day ordeal. *See Bell v. Jewel Food Store*, 83 F.Supp.2d 951, 957 (N.D. Ill. 2000) (an employee "bears the burden of proving that he was entitled to FMLA leave and the employer violated the statute by denying him such leave"). Therefore, the Court rejects McLaughlin's argument that, standing alone, his July 29 and 30, 2010 absences qualify for FMLA leave.

Second, an interference claim requires a showing that an employee is entitled to leave under the FMLA. A reasonable jury could find that McLaughlin is not entitled to leave for two reasons. First, as discussed directly above, a jury could find that his July 29 and 30 absences

10

should not be treated as part and parcel of cellulitis-related absences. Second, a jury could find that McLaughlin's July 29 and 30, 2010 absences were not health-related at all. According to the affidavit of Autozone's Regional Human Resources Manager, Larry Mustain, McLaughlin called Autozone on the morning of July 29, 2010 around 7:45 a.m. and notified his supervisor that "he was late for work and was arguing with his wife about which one of them was going to drive which vehicle" and conceded that "he was going to get one point for being late and asked how many points he would receive for not coming to work." This evidence, if credited, gives rise to an inference that McLaughlin's July 29 and 30, 2010 absences were not health-related.[4] (*See* Dkt. 38 at 2, n.1.)

**C. Is Autozone entitled to rely on Dr. Rupp's certification that McLaughlin did not become "totally disabled" until August 2, 2010?**

Normally, an employer is permitted to rely on a doctor's certification as to whether an employee is entitled to leave under the FMLA. As the Seventh Circuit has noted, an employer does not "violate the FMLA by relying upon [a] certification in the absence of some overriding medical evidence . . . [a]nd that medical evidence should come from the employee in time to save his job, not during the subsequent lawsuit." *Stoops*, 141 F.3d at 314 (affirming summary judgment in favor of employer where it relied on plaintiff's doctor's "negative certification" that employee was "not presently incapacitated and would not have to work intermittently or on a reduced work schedule"). According to Autozone, it was entitled to rely entirely on Dr. Rupp's certification – the "Attending Physician's Form" – which stated that McLaughlin was first diagnosed with cellulitis on August 2, 2010, and that he became "totally disabled" on that same

---

[4] The Court only makes this observation because McLaughlin filed a cross-motion for summary judgment. Thus, under the operative legal standard, Autozone's version of events is accepted as true. Notably, this evidence appears to have hearsay problems, as Mustain is testifying about what a supervisor told him. That said, McLaughlin did not object to the admissibility of this evidence in his reply brief. And, more importantly, the Court's overall decision does not turn on this ancillary issue.

11

day. Therefore, Autozone argues that it "properly considered the absences on July 29 and 30 outside of the FMLA certification and subject to the attendance policy." (Dkt. 38 at 9.)

While this argument has some appeal, the Court finds that it is better suited for trial for two reasons. First, it is unclear if Dr. Rupp's statement – which affirmatively stated when McLaughlin became "totally disabled" on August 2 (not July 29 or 30) – is akin to a negative certification like the one present in the *Stoops* case. *See Lara v. Central Grocers Cooperative, Inc.*, 2002 WL 31006132, at *5 (N.D. Ill. Sept. 5, 2002) (genuine issues of material fact existed as to whether a negative certification was issued and whether the employee was aware his employer was relying upon a negative certification to deny FMLA leave).

Second, and in a somewhat similar vein, Dr. Rupp's statement did not expressly pertain to FMLA certification and was not made on the form specifically tailored for FMLA determinations (i.e. the WH-380-E form, which notably does not contain the phrase "totally disabled"). Instead, the form that Dr. Rupp filled out pertained to McLaughlin's eligibility for short term disability benefits, which presumably explains the use of the term "totally disabled." Notably, however, "the standard for qualifying for medical leave under the [FMLA] differs from the standard for disability status within the meaning of the ADA." *See, e.g., Jamison v. Campbell Chain Cooper Tools*, 2009 WL 4429733, at *4 (M.D. Pa. Nov. 27, 2009). Although this is not an ADA case, that principle still applies here.

There are two potentially significant differences between the short term disability form used in this case and the WH-380E form. First, the term "totally disabled" is not necessarily interchangeable with "unable to perform job functions," and it is the latter that is important for FMLA purposes. *Cf. Kauffman v. Federal Express Corp.*, 426 F.3d 880, 886-87 (7th Cir. 2005) (a certification is sufficient if it includes, among other things, "a statement that the employee is

unable to work"; "[n]o matter what form is used, this information is the only information required for a sufficient certification"). This may be a matter of mere semantics, as Autozone argues. But it could also be a game-changer. As McLaughlin writes, "an individual whose sole restriction is driving may be unable to work as a delivery driver and/or perform the regular daily activity of driving while being far from 'totally disabled.'" (Dkt. 69 at 8.) Second, while the WH-380-E form asks the health care provider to state the "[a]pproximate date condition commenced," the short-term disability form instead asks "[w]hen was the condition first diagnosed." Arguably, this could be a meaningful nuance under the present circumstances. In the end, the Court finds that the jury will be in the best position to make the determination as to what extent Autozone was entitled to rely on Dr. Rupp's Attending Physician's Form.

**D.    What is the effect of Autozone's response to McLaughlin's notice that he potentially qualified for FMLA leave?**

Assuming that July 29 through August 15, 2010 should be treated as a single serious health condition (since a reasonable jury could reach that conclusion), the Court must then assess whether McLaughlin provided the requisite notice to Autozone. "When the employee fails to give his employer proper notice, the employer is under no duty to provide FMLA leave." *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). But, generally speaking, "it does not take much for an employee to invoke his FMLA rights; he must simply provide enough information to place the employer on notice of a probable basis for FMLA leave." *Id*. at 409 (citations and internal quotations omitted). Here, McLaughlin kept his employer apprised of his condition; his conduct was adequate to meet the modest "notice" threshold.

From there, an employee's notice triggers certain duties on the part of an employer: "Once an employee invokes his FMLA rights by alerting his employer to his need for potentially qualifying leave, the regulations shift the burden to the employer to take certain affirmative steps

to process the leave request." *Id*. Specifically, the employer "must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1) (emphasis added). This notice must include at least seven categories of information. *See* 29 C.F.R. § 825.300(c)(1). And, notably, the "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e) (emphasis added).

On August 6, 2010, Autozone sent McLaughlin information regarding short term disability benefits. The letter noted that Autozone complies with the FMLA "in providing job-protected leaves . . . as applicable." The letter further instructed McLaughlin how to apply for leave and who to call if he had any questions. As McLaughlin emphasizes, however, it is quite possible that Autozone did not comply with the precise letter of the law in this area. For instance, if McLaughlin's July 29, 2010 call to his employer constituted "notice," then Autozone did not notify McLaughlin of his potential FMLA eligibility within *five* business days; instead, it waited *six* days. Moreover, Autozone's letter did not meet the informational requirements of 29 C.F.R. § 825.300(c)(1). From this, McLaughlin argues that Autozone's "non-compliance with the regulatory mandates" kept him "in the dark about his FMLA rights," directly leading to his "inability to secure FMLA protections" for July 29 and 30, 2010. (Dkt. 62 at 13.) This, McLaughlin argues, amounts to an "unlawful interference with . . . the exercise of his FMLA rights" as a matter of law. *Id*. at 13-14. Accordingly, McLaughlin asks for summary judgment.

The Court is not persuaded for one key reason, that being, a "no harm, no foul" principle applies to notice requirements. Autozone has a strong argument that even if it "did commit a technical violation," McLaughlin "has not been harmed by any failure to receive notice and

14

therefore cannot recover for an FMLA violation." (Dkt. 64 at 8-9); *see also Easley v. YMCA of Metropolitan Milwaukee*, 335 Fed. Appx. 626, 632 (7th Cir. 2009) ("But [plaintiff's] leave *was* approved, and [plaintiff] has not shown that the omission of formal notification resulted in harm as is required to recover for a FMLA violation."); *see also* 29 C.F.R. § 825.300(e) (describing consequences of an employer's failure to provide proper notice).

After all, the vast majority of McLaughlin's absences (from August 2 through August 15) *were*, in fact, approved for FMLA leave. Thus, it is somewhat difficult to discern how any notice deficiencies are linked to the denial of FMLA leave for McLaughlin's July 29 and 30, 2010 absences. It is not as if, for instance, Autozone flatly denied McLaughlin leave due to his failure to submit a timely certification. Contrary to his assertions, McLaughlin was obviously not "kept . . . in the dark about his FMLA rights." Rather, he applied for and received FMLA leave – just not enough leave to allow him to stave off termination under Autozone's attendance policy.

McLaughlin responds by contending that he was denied FMLA leave because, among other reasons, Autozone never provided "FMLA certification forms allowing his doctor to properly certify the entirety of the absence as FMLA qualifying." (Dkt. 69 at 5). As alluded to above, this argument potentially has merit. As McLaughlin highlights, 29 C.F.R. § 825.300(c)(1)(ii) provides that the FMLA notice given to employees must include "[a]ny requirements for the employee to furnish certification of a serious health condition, serious injury or illness . . . and the consequences of failing to do so." 29 C.F.R. § 825.300(c)(1)(ii). In short, it is possible that the result could have been different had Autozone furnished McLaughlin with the requisite information. Again, the Court finds that this is an issue best left for a jury to decide.

## IV.  CONCLUSION

Because the Court finds that genuine issues of material fact exist in this case, Autozone's Motion for Summary Judgment (Dkt. 37) is **DENIED** and McLaughlin's Cross Motion for Summary Judgment (Dkt. 60) is **DENIED**.  The trial in this matter will cover three areas: (1) whether McLaughlin's July 29 and 30, 2010 absences should be considered in tandem with his August 2 through August 15, 2010 absences for purposes of FMLA leave; (2) whether Autozone violated the FMLA's notice requirements; and (3) if Autozone violated the notice requirements, whether that violation actually caused McLaughlin harm.

SO ORDERED.   05/02/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Philip J. Gibbons , Jr
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com, awhitinger@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Laurie Goetz Kemp
KIGHTLINGER & GRAY, LLP-New Albany
lkemp@k-glaw.com, cgriffin@k-glaw.com